IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
: CASE NO. 1:13-CV-01546
MAXUS CAPITAL GROUP, LLC, :
:
Plaintiff, : MEMORANDUM OF OPINION AND
: ORDER
-vs- :
:
:
LIBERTY SURPLUS INSURANCE :
CORPORATION, :

Defendant.
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On January 5, 2012, Maxus Capital Group ("Maxus") was sued for breach of contract by General Electric Capital Corporation ("GE Capital") in Delaware state court. At the time, Maxus carried professional liability insurance through the defendant Liberty Surplus Insurance Corporation ("Liberty"). Maxus requested a defense and indemnity from Liberty. Liberty declined on the ground that there was no coverage.

On May 20, 2013, Maxus filed the present lawsuit in Cuyahoga County Court of Common Pleas, seeking a declaratory judgment that Liberty breached its obligation to defend and indemnify Maxus in the underlying lawsuit. Liberty removed, answered, and filed a counterclaim, maintaining that there was no coverage under the insurance policy because Maxus did not timely notify it of GE Capital's claim. The parties have filed

cross-motions for summary judgment on the issue, which are briefed and ready for decision. For the reasons described below, the Court concludes that Liberty makes the more persuasive argument. Liberty's motion will accordingly be granted, and Maxus's denied.

**I.**

Maxus, a Delaware limited liability company with its principal place of business in Cuyahoga County, Ohio, is in the business of providing equipment financing to businesses. The seeds of the present dispute were planted in 2008, when Maxus entered into four loan agreements with PTM Technologies, Inc. ("PTM"). Maxus agreed to lend several million dollars to PTM in exchange for promises to repay and security interests in PTM's collateral. In order to perfect its security interests, Maxus filed a UCC-1 Financing Statement with the North Carolina Secretary of State. There was a problem, however, as Maxus's financing statement mistakenly identified the borrower as "PTM Tecnologies, Inc." -- which is to say, the letter "h" was omitted from the word "Technologies."

A bankruptcy court would later conclude that the spelling mistake had been fatal to the perfection of the security interest, but Maxus, being unaware of the error in the meantime, went ahead and assigned its rights under two of the PTM loan agreements to GE Capital, pursuant to a Master Assignment Agreement ("MAA"). The assignment meant trouble down the road, because under the MAA, Maxus warranted that it possessed a "first priority perfected security interest" in PTM's collateral (which, as we now know, it did not) and that Maxus "had not taken any action or failed to take any action that would prohibit or prevent [GE Capital] from holding a first priority perfected

2

security interest" in the collateral (which, arguably, it had). Maxus agreed that in the event of a breach of these warranties, it would repurchase the loan agreements from GE Capital.

PTM later filed for Chapter 11 bankruptcy in United States Bankruptcy Court for the Middle District of North Carolina. On May 26, 2010, the issue of the missing "h" was brought before that court, when PTM initiated an adversarial proceeding ("the PTM suit") against GE Capital, seeking to avoid its purported security interests in the collateral. The bankruptcy court concluded that on account of the missing "h" "the financing statements are seriously misleading as a matter of law . . . and therefore insufficient to perfect the [claimed] security interests." On July 1, 2011, the court entered an order deciding in PTM's favor, thus avoiding GE Capital's security interest.

On June 14, 2010, while the PTM suit was still pending, GE Capital (having recognized the risk of an adverse outcome in that case) sent a letter to Maxus. In the letter, GE Capital presciently expressed the position that because of the spelling mistake, Maxus failed to assign a perfected first priority security interest, as had been promised. GE Capital argued that on account of this failure, Maxus was obligated by the terms of the MAA to repurchase the loans from it. GE Capital requested that Maxus comply with the repurchase agreement.

Maxus never complied with GE Capital's request, and it never notified its insurer defendant Liberty of the existence of GE Capital's demand letter. Instead, it waited to get sued. On January 5, 2012, GE Capital filed a complaint against Maxus in Delaware state court for breach of contract.  At that time, Maxus carried a professional liability

3

insurance policy issued by Liberty. On April 25, 2012, Maxus notified Liberty that it was being sued. Maxus requested a defense, but Liberty refused to provide one.

Liberty's decision to decline coverage rested on language contained in the policy. The policy is claims-based, meaning it is triggered when a claim is made against the insured, not when the insured's negligent or wrongful conduct took place. Furthermore, under the policy, the insured is required to provide notice of a claim against it to the insurer within a certain time frame:

> As a condition precedent to coverage, the insured shall report all claims in writing to the Company as soon as practicable, but in no event later than sixty (60) days after expiration or termination of this policy . . . .

As such, in this instance, Maxus was required to notify Liberty of any claim against it within sixty days of expiration of the policy period in which the claim was made.

Maxus had two policies through Liberty: the first, with a policy period of April 27, 2010 to April 27, 2011 ("the 2010-11 policy period"); and a second, with a policy period of April 27, 2011 through April 27, 2012 ("the 2011-12 policy period"). As Liberty sees it, GE Capital made its claim during the 2010-11 policy period when it sent Maxus the June 14, 2010 letter. It is undisputed that Maxus never told Liberty about the letter explicitly. According to Liberty, it only learned of the letter when, after having received notice of the lawsuit on April 25, 2012, it reviewed GE Capital's complaint which referenced the letter. As such, Liberty argues, because notice of the claim occurred beyond the sixty-day grace period after expiration of the 2010-11 policy, notice was not timely.

Maxus sees things differently. It acknowledges that it never notified Liberty of the letter, but it argues this should not be an issue, because GE Capital's letter does not fit

4

the definition of "claim" as that word is understood in the policy. In Maxus's view, GE Capital did not make a claim against Maxus until GE Capital filed the lawsuit on January 5, 2012. Maxus indicates that it notified Liberty of the suit on April 25, 2012. As such, Maxus argues, because both the filing of the suit and notice of the suit to Liberty occurred within the 2011-12 policy period, Liberty was obligated to provide a defense and indemnity.

The issue for the Court to decide is a narrow one. Stated simply: did GE Capital's letter amount to a "claim" as that term is defined in the insurance policy? Because the answer is yes, Liberty's motion will be granted and Maxus's denied.

**II.**

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000) (citing Northland Ins. Co. v. Guardsman Prods., Inc., 141 F.3d 612, 616 (6th Cir. 1998)).

In the present case, the parties present no disagreement as to the material facts. As such, the issue is which party is entitled to judgment as a matter of law.

**III.**

In Ohio, "[a]n insurance policy is a contract whose interpretation is a matter of law." City of Sharonville v. American Employers Ins. Co., 109 Ohio St.3d 186, 2006

5

Ohio 2180, 846 N.E.2d 833, 836 (2006) (citation omitted). Ambiguous terms are "construed strictly against the insurer and liberally in favor of the insured." King v. Nationwide Ins. Co., 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383 (1988) (citations omitted). The Court must look to see if the contract language is ambiguous before interpreting the contract in the insured's favor. St. Marys Foundry, Inc. v. Employers Ins. Of Wausau, 332 F.3d 989, 992-93 (6th Cir.2003) (citations omitted) (applying Ohio law). The Court must "give the terms of the contract their plain and natural meaning" and "give meaning to every paragraph, clause, phrase, and word." Id. (citations omitted). The Court must consider the policy as a whole when interpreting its terms. Safeco Ins. Co. of America v. White, 122 Ohio St.3d 562, 2009 Ohio 3718, 913 N.E.2d 426, 430 (2009) (citations omitted). The insurer bears the burden of showing that its interpretation of the policy is the only reasonable interpretation consistent with these principles; it cannot simply show that "its interpretation is more reasonable than the policyholder's." Andersen v. Highland House Co., 93 Ohio St.3d 547, 2001 Ohio 1607, 757 N.E.2d 329, 333 (2001) (quotation omitted).

In this instance, the policy language at issue relates to the definition of the word "claim." The policies define "claim" as follows:

> "Claim" means receipt of a civil action, suit, proceeding or demand naming the insured seeking Damages and/or Professional Service arising out of a Wrongful Act by the Insured or any Entity for whom the Insured is legally liable. A Claim will be deemed made on the earliest date any insured receives the civil action, suit, proceeding or demand.

(Exhibit 1, p. 3; Exhibit 2, p. 40). There are three basic components to this definition:

(1) receipt of a civil action, suit, proceeding or demand

(2) naming the insured

(3) and seeking damages which arise out of the insured's wrongful conduct

There is no question that the second and third elements are satisfied. GE Capital's letter names Maxus and seeks damages, since it requests that Maxus repurchase the PTM loans at a price to be determined by the terms of the MAA. And the letter further indicates that GE Capital's right to damages arises from Maxus's wrongful act, to wit, Maxus's failure to assign a perfected security interest as it had promised.

The only question, as Maxus understands there to be one, relates to whether GE Capital's letter is a "demand." In the Court's view, it is difficult to see how it is not. Because the policy does not specifically define "demand," the word is given its plain and ordinary meaning. Dictionary definitions of "demand" include "the act of demanding or asking especially with authority: a peremptory request"; "The asking or seeking for what is due or claimed as due," Webster's Third New International Dictionary (1986), "An act of demanding; an urgent request"; "a formal claim"; "a request that some act be done or payment made in accordance with a legal requirement." The American Heritage Dictionary (5th Ed. 2011). By outlining Maxus's obligation to repurchase the PTM loans pursuant to their contract and requesting that Maxus comply with that obligation, GE Capital's letter plainly fits the definition of the word "demand."

The Court rejects Maxus's attempts to narrow the definition of "demand" to something that conveniently excludes GE Capital's letter. Maxus argues that a principle of construction known as *ejusdem generis* works in its favor here. The idea behind *ejusdem generis* is that when terms appear in a series, a general term ending the series should take its meaning from the specific terms that precede it. As explained by the Ohio Supreme Court,

7

> where in a statute terms are first used which are confined to a particular class of objects having well-known and definite features and characteristics, and then afterwards a term is conjoined having perhaps a broader signification, such latter term is, as indicative of legislative intent, to be considered as embracing only things of a similar character as those comprehended by the preceding limited and confined terms.

State v. Aspell, 10 Ohio St. 2d 1, 4, 225 N.E.2d 226, 228 (1967). To demonstrate how the principle works, Maxus cites Retail Ventures v. National Union Fire Insurance, Co., 691 F.3d 821 (6th Cir. 2012). In Retail Ventures, an insured challenged its insurer's refusal to cover losses that resulted from a computer hacking scheme that compromised customer credit card information. The insurer denied coverage on the basis of the following exclusion:

> Coverage does not apply to any loss of proprietary information, Trade Secrets, Confidential Processing Methods, or other confidential information of any kind.

The Sixth Circuit held in favor of the insured. The court applied the doctrine of *ejusdem generis* and held that the specific terms -- "loss of proprietary information," "Trade Secrets," and "Confidential Processing Methods" -- limited the scope of the general term "other confidential information of any kind." The court reasoned:

> The last item, "other confidential information of any kind," is most certainly general and should be interpreted as part of the sequence to refer to "other secret information of Plaintiffs which involves the manner in which the business is operated." The "stolen" customer information was not plaintiffs' confidential information, but was obtained from customers in order to receive payment, and did not involve the manner in which the business is operated. The district court did not err in finding that the loss in this case was not clearly excluded . . . .

Id. at 834.

In this instance, the series under consideration is "civil action, suit, proceeding or demand." Maxus argues that, similar to Retail Ventures, the meaning of the purportedly

8

general term "demand" should be constrained by the preceding specific terms "civil action," "suit," and "proceeding." As the plaintiff sees it, the terms "civil action," "suit," and "proceeding" are all of the same kind or class in that they all relate to "some sort of legal, or at least quasi-legal, proceeding." Therefore, the plaintiff maintains, the general term "demand" should be construed to encompass only a legal or quasi-legal proceeding.

*Ejusdem generis* has no application here. "The rule of ejusdem generis, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty." Harrison v. PPG Ind., Inc., 446 U.S. 578, 588 (1980). As described above, there is nothing ambiguous or uncertain about what the word "demand" means, in this context. Giving the word its plain and natural meaning, it is evident that GE Capital's letter seeking compensation from Maxus for Maxus's failure to assign a perfected first priority security interest qualifies as a "demand."

Furthermore, the series of words at issue here do not fit the *ejusdem generis* mold. As explained above, the doctrine applies in certain instances when a general or collective term ends a series of specific terms. The problem here is that the word "demand" is not a general or collective term. Courts tend to find such terms when specific terms are "followed by a catchall word or phrase which is linked to the specific terms by the word 'other'. . . ." Moulton Gas Serv., Inc. v. Zaino, 97 Ohio St. 3d 48, 50, 776 N.E.2d 72, 75 (Ohio 2002). For example, in the series "fishing rods, nets, hooks, bobbers, sinkers, and other equipment," the word "other" explicitly links the general term "equipment" to the preceding specific terms. See United States v. Aguilar, 515 U.S. 593, 615 (1995)

9

Here, there is no explicit link, such as the word "other," that would demonstrate that the word "demand" is connected conceptually to the words that precede it. Nor is there any implicit link. The first three members of the series (civil action, suit, and proceedings) are types of legal proceedings before a judicial body. The last member of the series, "demand," does not, by its commonly understood definition, broadly refer to various types of legal proceedings. As noted above, a "demand" refers to "the act of demanding or asking especially with authority: a peremptory request" or "[t]he asking or seeking for what is due or claimed as due." Webster's Third New International Dictionary (1986). As such, the word "demand" is not a term of "broader signification" such that it encompasses, by its ordinary meaning, the words that precede it. Rather, the word "demand" is a term of different signification with its own meaning. A demand may come in relation to a "civil action, suit, or proceeding," or a demand may be asserted outside the context of a "civil action, suit, or proceeding." This does not make the word "demand," by any ordinary definition, a broader concept that encompasses those terms.

There is an additional problem with Maxus's argument. To limit the meaning of "demand" to "some type of legal or quasi-legal proceeding," (a phrase that Maxus selects out of thin air) the term "demand" would be rendered essentially meaningless. In construing a contract, the Court "must give meaning to every paragraph, clause, phrase and word, omitting nothing as meaningless, or surplusage." Affiliated FM Ins. Co. v. Owens-Corning Fiberglas Corp., 16 F.3d 684, 686 (6th Cir. 1994). If "demand" means only "a legal or quasi-legal proceeding" as Maxus suggests, what precisely does the word "demand" add to the series "civil action, suit, [or] proceeding" that is not already

10

present? Maxus speculates that if "demand" were so construed it would include governmental or administrative hearings, disciplinary actions, or arbitration. However, these examples are already contemplated by the general term "proceeding," making Maxus's interpretation of "demand" superfluous.

In sum, Liberty's argument that GE Capital's letter to Maxus constitutes a claim under the policy is well-taken. The Court further agrees with Liberty that GE Capital's letter and the later lawsuit should be considered a single claim, because they arise out of the same "Wrongful Act." Both the letter and the lawsuit seek damages for Maxus's failure to assign a perfected first priority security interest as it had promised. Under the policy, a claim "shall be deemed to be first made on the earliest date any insured receives the civil action, suit, proceeding, or demand." In this instance, Maxus first had notice of the claim when it received GE Capital's letter on June 14, 2010. Because the claim was not reported to Liberty until after the operative policy had expired, Liberty was not obligated to provide coverage.

**IV.**

For the reasons stated above, Liberty's motion for summary judgment is granted. Maxus's is denied.

IT IS SO ORDERED.

          /s/ Lesley Wells
      UNITED STATES DISTRICT JUDGE

Date: September 26, 2014

11